UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

DIANE L. ROSE, Executrix of the :
Estate of Dale M. Rose, and :
DIANE L. ROSE :
in her Individual Capacity, :
    Plaintiff :
     :
    v. : File No. 1:08-CV-183
     :
AMERICAN ALTERNATIVE :
INSURANCE CORPORATION and :
ELECTRIC INSURANCE COMPANY, :
    Defendants. :

<u>RULING ON PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>
(Papers 39 and 41)

I. <u>Background</u>

This case involves claims by Diane Rose, as Executrix of the Estate of Dale Rose and in her individual capacity, against the underinsured motorist (UIM) provisions of automobile insurance policies issued by American Alternative Insurance Corporation (AAIC) and Electric Insurance Company (EIC). The claims arise from an automobile accident that occurred when Dale Rose was transported by ambulance to a hospital for treatment of pulmonary insufficiency and renal failure. The ambulance was involved in a head-on collision with an automobile driven by Jennifer Laughlin, who was killed in the accident. Mr. Rose was seriously injured, as were other persons inside the ambulance.

Ms. Laughlin was determined to be the sole tortfeasor, and her liability insurance coverage was exhausted in mediation. The

1

Middlebury Volunteer Ambulance Association (MVAA) which transported Mr. Rose is insured by two policies with AAIC. Claims have been made against the AAIC policies' UIM provisions by persons in the ambulance, as well as Mr. Rose's estate. The Rose Estate has also made a claim against the UIM provisions of Dale Rose's personal automobile insurance policy with EIC. The Rose complaint seeks only a declaration of rights under the AAIC and EIC policies.

This ruling responds to cross motions for partial summary judgment by AAIC and EIC seeking a declaration of coverage priorities. There are three policies at issue. First, AAIC issued a Commercial Automobile Policy with UIM coverage to MVAA. The parties agree that because AAIC insured the vehicle in which Mr. Rose was injured, this Policy provides the next layer of coverage. Second, EIC issued a Personal Auto Policy to Mr. Rose that provided UIM coverage. Third, AAIC issued a Commercial Umbrella Policy to MVAA, intended to cover any liability exceeding MVAA's underlying Commercial Automobile Policy limit. AAIC and EIC dispute which of these two policies should provide the next layer of coverage beyond AAIC's Commercial Automobile Policy.

AAIC contends its Commercial Umbrella Policy is a "true" excess policy under Vermont law, whereas EIC's Personal Auto

Policy is a "coincidental" excess policy, and therefore AAIC's Umbrella Policy is triggered only when EIC's Auto Policy is exhausted. EIC argues the "true" versus "coincidental" distinction does not apply to coverage under UIM policies. Instead, EIC contends its coverage is excess over both of AAIC's policies because this case involves UIM coverage and its "other insurance" clause is controlling over AAIC's.

II. Analysis

Summary judgment is appropriate where the parties' filings indicate "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Vermont law, "[c]onstruction of the language of insurance contracts is a question of law, not fact." Fireman's Fund Ins. Co. v. CNA Ins. Co., 177 Vt. 215, 220 (2004). Vermont courts "interpret insurance contracts according to their terms" which should be accorded "their plain, ordinary and popular meaning." Id.

The Vermont Supreme Court held in Fireman's Fund that in a priority conflict between "true" and "coincidental" insurance providers, "the true excess policy need not contribute until after the coincidental insurers' limits are exhausted." 177 Vt. at 235. AAIC contends its Umbrella Policy is a true excess policy and EIC's Auto Policy is a coincidental excess policy.

3

The Court determines whether a policy is a "true" or "coincidental" excess policy by referring to a policy's terms and the nature of coverage it provides. See id. at 234-35. The Vermont Supreme Court explained that true excess coverage is distinguishable from coincidental because

> [t]rue excess coverage occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that the primary will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted. . . . Because "true" excess policies are designed to supplement, not replace, primary coverage, they generally require underlying primary insurance in a specific sum and . . . for the same risks. . . . Moreover, because the "true" excess policy takes effect only after the primary policy is exhausted, liability for the covered claims does not attach when the loss occurs. Rather, liability attaches when the underlying insurance is exhausted.

Id. at 234 (internal citations and quotations omitted).

The Court finds based on these criteria that AAIC's Commercial Umbrella Policy is a true excess policy. MVAA purchased two policies through AAIC, the Commercial Automobile Policy and the Commercial Umbrella Policy. These policies cover the same loss, but the Commercial Umbrella Policy will "in no event . . . apply unless the underlying insurance applies or would apply but for the exhaustion of its applicable Limit of Liability." Excess Follow Form Vermont UM Coverage Endorsement (Paper 39-3 at 45.) MVAA's Commercial Automobile Policy is an "underlying insurance" policy under AAIC's Schedule of

4

Underlying Insurance. Schedule of Underlying Insurance (Paper 39-3 at 2.) AAIC's Umbrella Policy therefore <u>requires</u> the existence of underlying insurance, and under no circumstances can be a primary policy. This is a true excess policy.

> In contrast, "coincidental" excess insurance is primary insurance that is rendered excess by operation of a policy provision, like an "other insurance" clause . . . . [A]n "other insurance" clause is a device used by the insurer to limit liability where other primary insurance exists. If an "other insurance" clause operates . . . the policy with the controlling "other insurance" clause becomes secondarily liable. This does not mean, however, that like the "true" excess policy, liability attaches only if the primary policy is exhausted. Rather, where a primary policy is secondarily liable because of an "other insurance" clause, liability attaches at the moment of the loss.

<u>Id.</u> (internal citations and quotations omitted). Dale Rose's Personal Auto Policy through EIC is a primary policy. Its UM/UIM coverage is rendered excess over other UM/UIM policies through operation of its "Other Insurance" clause, which states: "If there is other applicable insurance similar to the insurance provided under this Part of the policy, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance similar to the insurance provided under this Part of the policy." EIC Personal Auto Policy UM Coverage (Paper 39-2 at

23.) EIC's Policy does not require the insured to maintain other insurance for the same risk and does not limit coverage to losses in excess of the limits of any underlying coverage. This language exemplifies a coincidental excess policy. "The fact that [EIC]'s policy is excess under a certain set of circumstances does not transform it from a primary policy with an 'other insurance' clause into a 'true' excess policy." Fireman's Fund, 177 Vt. at 235.

EIC contends the "true" versus "coincidental" excess policy construct applies only in liability cases, not where UM/UIM coverage is involved. This is so, according to EIC, because "UM/UIM coverage is never 'primary' coverage, in the Fireman's Fund sense, that might be rendered 'excess' by policy language and circumstance; it is always 'excess,' if it comes into play at all." Document 41 at 6. The Court rejects this premise for two reasons. First, UM coverage would be primary, if, for example, EIC's insured were involved in an accident in an uninsured vehicle not owned by the insured. Second, the Court is not convinced the distinction EIC draws between liability and UM/UIM coverage, even where applicable, renders Vermont's construct unsound here. The Court in Fireman's Fund based the "true" versus "coincidental" excess distinction on "a fundamental difference in the nature of the risk assumed by

each." 177 Vt. at 234. "[T]he fact that a policy is issued as an umbrella policy at rates reflecting the reduced risk insured indicates the intent that the policy is excess over other excess policies." Bosco v. Bauermeister, 456 Mich. 279, 571 N.W.2d 509, 514 (1997) (case cited with approval in Fireman's Fund). EIC presents no reason why the risk assessment underlying the true versus coincidental coverage distinction in the liability context would not apply equally to UIM coverage. UIM coverage is first party coverage functioning as a surrogate for insufficient third party liability coverage. Even in the UIM context, an insured holding an umbrella policy must purchase underlying primary coverage for the same risk and exhaust that coverage before turning to its umbrella policy.

The Court therefore finds that under Vermont law the AAIC Commercial Umbrella Policy is a "true" excess policy and EIC's Personal Auto Policy is a "coincidental" excess policy. Accordingly, MVAA's AAIC Commercial Automobile Policy will provide the first layer of UIM coverage, Dale Rose's EIC Personal Auto Policy will provide the next layer of UIM coverage, and MVAA's AAIC Commercial Umbrella Policy will provide the third layer of UIM coverage.

III. Conclusion

For the foregoing reasons, AAIC's Motion for Partial Summary Judgment is GRANTED, and EIC's Cross-Motion for Partial Summary Judgment is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 20th day of May, 2009.

                                        /s/ J. Garvan Murtha
                                        J. Garvan Murtha
                                        United States District Judge